IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| TERRANCE THOMPSON,<br>a/k/a TERRENCE THOMPSON<br><br>    Plaintiff,<br>v.<br><br>FLOYD BONNER and KIRK FIELDS,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)    No. 2:20-cv-2658-JTF-atc<br>)<br>)<br>)<br>) |

**ORDER MODIFYNG THE DOCKET,
DISMISSING COMPLAINT WITHOUT PREJUDICE (ECF NO. 1),
DENYING INJUNCTIVE RELIEF,
AND GRANTING LEAVE TO AMEND**

Before the Court is the *pro se* complaint filed under 42 U.S.C. § 1983 on August 28, 2020 by Plaintiff Terrance Thompson, who is incarcerated at Shelby County Criminal Justice Center (SCCJC) in Memphis, Tennessee. (ECF No. 1.) On September 1, 2020, the Court granted him leave to proceed *in forma pauperis*. (ECF No. 4.)

Thompson's allegations arise from his confinement at SCCJC during the ongoing COVID-19 pandemic. (ECF No. 1.) He sues as Defendants: (1) "Shelby County Sheriff Floyd Bonner, ect al. [sic]"; and (2) "Jail Administrator Kirk Fields." (*Id*. at PageID 2.) The Clerk shall modify the docket to add Shelby County as a Defendant.

Thompson seeks: release from incarceration; $10,000 compensatory damages; and $500,000 punitive damages. (*Id*. at PageID 17.) He also asks for appointment of counsel. (*Id*.)

**I.      FACTUAL BACKGROUND**

According to Thompson's complaint, Defendants acted with deliberate indifference in "expos[ing] [him]" to COVID-19 infection by failing to "respond[] reasonabl[y]" to his risk of

contracting it while incarcerated.  (*Id*. at PageID 2-3 & 6.)  Plaintiff suffers from "ongoing medical conditions" such as high blood pressure and a family history of diabetes, which he contends heighten his risk of coronavirus infection.  (*Id*. at PageID 2 & 6.)  He is "forced to live in daily fear" of catching COVID-19 since "all 3 officers in [his] dorm were quarantined for COVID-19 or exposure to [it]."  (*Id*. at PageID 5 & 6.)  According to Thompson, "circumstances suggest" that Defendants knew of the risk of COVID-19's spread among SCCJC inmates.  (*Id*. at PageID 5.)[1]  However, he does not particularly describe the measures they supposedly should have taken based on that knowledge.  Plaintiff has not tested positive for the virus or suffered any symptoms from it.  Rather, his allegations are based upon prospective harms.  (*See id*. at PageID 7 ("I will be at a substantial risk to exposure and serious health problem[s] and possibly death").)

## II.   LEGAL STANDARD

The Court must screen prisoner complaints and dismiss any complaint, or any portion of it, if the complaint —

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

---

[1] Plaintiff appends to his complaint "a sworn declaration of Dr. Jamie Meyer." (ECF No. 1 at PageID 6-7.)  He argues that it shows the heightened risk of epidemics in jails.  (*Id.*)  The document seems to be an expert witness report by Dr. Meyer in a different lawsuit. (ECF No. 1 at PageID 8–10).  He also appends to his complaint extracts from what seem to be another inmate's brief filed in a different lawsuit (the Extracts). Those sections purport to rely on Dr. Meyer's report to argue about COVID-19's threat to incarcerated individuals. (*Id*. at PageID 11-16; *see also id*. at PageID 16 (crossing out an unidentified inmate's name and inserting "Thompson").)  Even assuming for discussion purposes that Plaintiff properly relies on Dr. Meyer's declaration, the Court is unconvinced that the declaration bolsters his claims.  Namely, Dr. Meyers's report details the dangers of Covid-19 *spreading* in prisons.  Here, Plaintiff has not contracted the virus.  Furthermore, because Plaintiff has not submitted or signed the Extracts as his own pleadings in compliance with the Federal Rules of Civil Procedure, the Court also does not make any rulings about the Extracts' content.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

As to step one, in assessing whether the complaint states a claim on which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Under those standards, the Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). The Court does not assume that conclusory allegations are true, because they are not "factual," and all legal conclusions in a complaint "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. In addition, Federal Rule of Civil Procedure 8 provides guidance on this issue. Even though Rule 8 only requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," it also requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

Courts screening cases will accord slightly more deference to *pro se* complaints than to those drafted by lawyers. "*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). That said, p*ro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has

3

not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

## III. REQUIREMENTS TO STATE A CLAIM UNDER 42 U.S.C. § 1983

Plaintiff sues under 42 U.S.C. § 1983. To state a claim under that statute, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States, and (2) that a defendant caused harm while acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). For his claims to succeed, Plaintiff must satisfy these requirements.

## IV. ANALYSIS

Asserting claims under 42 U.S.C. § 1983, Thompson requests both: (1) injunctive relief via release from confinement (ECF No. 1 at PageID 3, 6 & 17 ("in th[is] case a guilty plea constitutes cruel and unusual punishment")); and (2) monetary relief (*id.* at PageID 17).

### A. Claims Seeking Injunctive Relief Via Release From SCCJC

The Court analyzes Thompson's claim for injunctive relief under the Eighth Amendment.

As an initial matter, the Court notes that in determining whether to issue a temporary restraining order or preliminary injunction, it must consider the following four factors: "(1) whether the claimant has demonstrated a strong likelihood of success on the merits, (2) whether the claimant will suffer irreparable injury in the absence of a stay, (3) whether granting the stay will cause substantial harm to others, and (4) whether the public interest is best served by granting the stay." *Workman v. Bredesen,* 486 F.3d 896, 905 (6th Cir. 2007); *see also Northeast. Ohio Coalition for the Homeless v. Blackwell,* 467 F.3d 999, 1009 (6th Cir. 2006) (same). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v.*

*Lexington–Fayette Urban Cnty. Gov't,* 305 F.3d 566, 573 (6th Cir. 2002); *see also Leary v. Daeschner,* 228 F.3d 729, 739 (6th Cir. 2000) ("the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion").

Second, Thompson argues that his continued confinement at SCCJC during the pandemic constitutes cruel and unusual punishment. (ECF No. 1 at PageID 6.) Such claim is construed under the Eighth Amendment. However, the relief he seeks is not available because the proper vehicle for pursuing "immediate release or a speedier release" from confinement is a habeas corpus petition. *See Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973)). *See also Mass v. CoreCivic, Inc.*, No. 20-0798, 2020 WL 5816232, at *1 (M.D. Tenn. Sept. 30, 2020) (citation omitted). A prisoner seeking release must do so "through a writ of habeas corpus, not through § 1983." *Wershe v. Combs*, 763 F.3d 500, 504 (6th Cir. 2014) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). Thompson does not present a core challenge for purposes of habeas review; that is, he does not contest the validity of his convictions or sentences. Nor does he challenge the duration of his confinement, as has been recognized in habeas. In other words, Thompson seeks early release from prison, but he does not do so on the basis that his conviction or sentence are invalid. Instead, he seeks such injunctive relief based on unconstitutional conditions of confinement, a type of challenge that the Supreme Court has not recognized as a cognizable habeas claim, as now explained below.

Thompson's Eighth Amendment claims sound more in the nature of the type of habeas claim the U.S. Supreme Court in *Preiser* hypothesized, but has yet to recognize: "[w]hen a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making the custody illegal." *Preiser*,

411 U.S. at 499.  The Supreme Court resurrected this idea more recently in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017).  Yet, although the *Abbasi* claimants alleged they were held in tiny, empty, constantly lighted cells for over 23 hours per day without basic hygiene, and subjected to physical abuse, the Supreme Court did not find it was such a case for habeas relief "to remove the restraints making the custody illegal."  *Abbasi*, 137 S. Ct. at 1853.  "The *Abbasi* decision is telling of just how extraordinary the case must be for habeas jurisdiction to lie before a prisoner may be released from lawful custody based on a condition of confinement."  *See Wragg v. Ortiz*, No. 20-5496, 2020 WL 2745247, at *19 (D.N.J. May 27, 2020).

While habeas is the proper procedural vehicle for the remedy of release[2], Thompson filed his claims under § 1983 -- not habeas -- and his Eighth Amendment conditions of confinement claim is not recognized as a cognizable habeas claim.  Plaintiff's case is not the sort of Eighth Amendment "exceptional case" to warrant habeas jurisdiction.  *See*, *e.g.*, *Wragg*, 2020 WL 274524, at *19 (the circumstances here are not so exceptional to make the grant of bail necessary for a habeas remedy).  Plaintiff's concerns about health risks from COVID-19 are justifiable.  Such fears permeate American society.  But nothing in his complaint rises to the level of circumstances warranting habeas relief under controlling precedent.  Plaintiff presents this Court with no authority persuading it otherwise.

This result is consistent with other decisions in this jurisdiction regarding injunctive relief related to COVID-19 claims.  For example, as this Court has previously explained as to COVID-19 circumstances at Shelby County Jail:

> It is uncontroverted that the Jail does not separate all medically-vulnerable detainees from the general population …

---

[2] As noted *supra*, Thompson seeks compensatory damages and "some type of alternative to incarceration pending trial." (ECF No. 1 at PageID 6.)

6

> Where a detainee alleges that the incurable horror of his jail's conditions merit injunctive habeas relief … a detainee [must] alleg[e], then actually show[ ] that the conditions at the jail are incurable ...
>
> [Here,] the proof before the Court certainly shows failures with how the Jail is detaining medically vulnerable detainees amid this pandemic.  Yet, the proof also shows that these failures can likely be remedied quickly, and that the Jail can confine medically-vulnerable detainees … Indeed, many complaints by Plaintiffs have already been addressed.  Ultimately, Plaintiffs' likelihood of success on the merits is not strong … Defendants have made significant strides in practices at the Jail, yet doubts persist as to whether the conditions at the Jail are legally sufficient.  However, to the extent the measures may be legally insufficient, they are remediable in short time.  That Defendants can quickly cure their public health lapses renders it unlikely that Plaintiffs will succeed on the merits of their habeas claim.  Given that Plaintiffs show little chance of succeeding on the merits, analysis of the other preliminary injunction factors is needless.

*Busby v. Bonner*, No. 20-2359, ECF No. 124 at PageID 2811, 2813-14, 2815 & 2820 (W.D. Tenn. Aug. 7, 2020) (citing *Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020) ("Our cases warn that a court must not issue a preliminary injunction where the movant presents no likelihood of merits success") (other citations omitted).)

For all of these reasons, Thompson has not demonstrated: a strong likelihood of success on the merits; that the relief he seeks is necessary to avoid substantial harm to others; or that the public interest is best served by granting the injunctive relief he seeks. *See Workman*, 486 F.3d at 905. His request for injunctive relief based on the Eighth Amendment fails to state a claim for relief.[3]

---

[3] Even if Thompson intended this Court to consider his claims as an application for compassionate release, his efforts still fail to warrant relief.  By statute, a federal court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c).  That rule comes with a few exceptions, one of which permits compassionate release.  Section 3582(b)(1) allows a federal sentencing court to reduce a *federal* defendant's sentence based on "extraordinary and

### B. Claims For Monetary Damages

#### 1. Official Capacity Claims / Claims Against Shelby County

Thompson does not specify whether he sues Defendants in their official or individual capacities. The Sixth Circuit requires a plaintiff to "set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials." *Wells*, 891 F.2d at 592. "Absent a specification of capacity, it is presumed that a state official is sued in his official capacity." *Northcott v. Plunkett*, 42 F. App'x 795, 796 (6th Cir. 2002) (citing *Wells*, 891 F.2d at 593).

The official capacity claims in Thompson's complaint are treated as claims against Defendants' employer, Shelby County. *See Jones v. Union Cnty., Tennessee*, 296 F.3d 417, 421 (6th Cir. 2002) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)). Shelby County may be held liable *only* if Plaintiff's injuries were sustained pursuant to an unconstitutional custom or policy. *See Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691-92 (1978). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)). Thompson does not allege

---

compelling" reasons. Because Thompson is a state prisoner awaiting resolution of state charges, compassionate release is not an available remedy for him.

that he has been deprived of a right because of a Shelby County policy or custom. That is, he does not attribute to any County policy or custom the "unreasonable [COVID-19] respon[se]" of which he complains. (*See* ECF No. 1 at PageID 6.) He therefore does not state a claim against Shelby County or against any Defendants in their official capacity.

### 2. Eighth Amendment Claim For Compensatory Damages As To COVID-19 Conditions Of Confinement

Thompson's allegations of "cruel and unusual punishment" (ECF No. 1 at PageID 6) and "substantial risk of serious harm" (*id*. at PageID 4) about COVID-19 protocols at SCCJC are construed under the Eighth Amendment. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). Under that constitutional provision, prison officials must provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter and medical care. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Extreme deprivations are required to make out a conditions of confinement claim. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, ... only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal quotations and citations omitted). The Sixth Circuit has explained the law in this jurisdiction as to confinement conditions claims:

> In certain extreme circumstances, the totality itself may amount to an [E]ighth [A]mendment violation, but there still must exist a specific condition on which to base the [E]ighth [A]mendment claim. We believe such conditions "considered alone or in combination [with other conditions]," must amount to a deprivation of "life's necessities," before a violation of the [E]ighth [A]mendment can be found" … [A] specific deprivation of one or more identifiable human needs must be established in order to prove an Eighth Amendment violation, [and] the plaintiff must show "a

9

culpable state of mind on the part of [the defendant] prison officials." *Berryman v. Johnson*, No. 88-1239 & 88-1280, 1991 WL 150808, at *9-10 (6th Cir. Aug. 6, 1991) (internal citations omitted). "It is thus settled that Eighth Amendment claims based on prison conditions have both an objective component (denial of … 'the minimal civilized measure of life's necessities'), and a subjective component ('deliberate indifference')." *Id*. at *10 (internal citations omitted.) *See also Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 928. A prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005), or that he has been deprived of the "minimal civilized measure of life's necessities," *Wilson*, 501 U.S. at 298 (quoting *Rhodes*, 452 U.S. at 347); *see also Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004). The subjective component requires that jail officials acted with requisite intent -- *i.e.*, had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 302-03 (plaintiffs must show that prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009). A prison official must subjectively know of an excessive risk of harm to an inmate's health or safety and disregard that risk. *Farmer*, 511 U.S. at 837.

Thompson "live[s] in daily fear of the contraction of COVID-19" because of high blood pressure and familial diabetic history. (ECF No. 1 at PageID 2 & 6.) He points to the "vastly greater capacity to prevent and test infectious illness outside the [correctional] environment." (*Id*. at PageID 7.) The novel coronavirus and the risks attendant upon contracting it are sufficiently

serious for purposes of the Eighth Amendment's objective prong. However, Thompson fails to adequately allege the subjective component as to each of the Defendants.

As to Bonner and Fields, Thompson suggests that they were constitutionally deficient in mitigating inmates' COVID-19 risks at SCCJC as a whole. (ECF No. 1 at PageID 5-6.) This does not demonstrate their subjective knowledge of a risk in Plaintiff's particular case that they specifically disregarded. In fact, by Plaintiff's own admission, SCCJC officials observed coronavirus safety measures by quarantining personnel who had tested positive from, or were exposed to, the virus. (*Id*. at PageID 5.) That action deflates Thompson's suggestion of their deliberate indifference. Furthermore, he does not demonstrate that (1) any particular protocols will or would have prevented him from contracting the virus or (2) such measures are/were available at SCCJC during the relevant times. These points are significant, since the Eighth Amendment does not require perfection on the part of prison officials. *See United States v. Cato*, No. 14-315-01, 2020 WL 4193055, at *1 n.1 (E.D. Pa. July 21, 2020) (internal citations omitted). Thompson's speculation that "circumstances suggest" Bonner's and Fields's knowledge of his personally unique risks from general knowledge about coronavirus, *see* ECF No. 1 at PageID 5, does not show their "deliberate indifference" to a substantial risk that he would suffer serious harm.

For all of these reasons, Thompson fails to state an Eighth Amendment conditions of confinement claim for relief as to any of the Defendants.

### C. Claim Of Inadequate Grievance Procedure

Thompson states that "no action was taken" on his grievances about COVID-19 fears. (ECF No. 1 at PageID 2 & 8.) He does not allege arbitrary denial of access to the grievance process.

Prisoners do not possess a constitutional right to a prison grievance procedure. *See Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (holding that plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional right to an effective prison grievance procedure."). Even if a grievance system was constitutionally guaranteed, Thompson has not shown how any particular Defendant's conduct with respect to the grievance process directly affected his "ability to bring his claim before any court." *See Coleman v. Governor of Michigan*, No. 09-1139, 413 F. App'x 866, 874-875 (6th Cir. 2011) (citation omitted). Furthermore, a failure to take corrective action in response to an inmate grievance does not supply the necessary personal involvement for § 1983 liability. *See Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation.").

Thompson's contentions regarding his grievances fail to state a claim for relief.

### D. **Claims Against "Et Al."**

Thompson lists "ect. al. [sic]" as Defendant(s). (ECF No. 1 at PageID 1-2.) This lack of specificity in his pleading warrants dismissal of his claims against such putative parties.

Federal Rule of Civil Procedure 8(a)(2) sets forth a liberal pleading standard, *Smith v. City of Salem,* 378 F.3d 566, 576 n. 1 (6th Cir. 2004), requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the ... claim is and the grounds upon which it rests,'" *Twombly,* 550 U.S. at 555 (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). It is a basic pleading essential that a plaintiff must attribute factual allegations to particular defendants. *Id*. at 544 (holding that, in

12

order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a complaint fails to link a specific defendant to particular misconduct, the complaint is subject to dismissal, even under the liberal constructions afforded to *pro se* complaints. *See*, *e.g.*, *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004). In order that a plaintiff provide "fair notice" of his claims against putative parties, Rule 8 requires him to identify the defendant(s) whom he feels are responsible for constitutional deprivations. Generic identifiers such as "others" -- without surname specificity -- are insufficient to link a specific defendant to offending actions. Such vagaries deprive intended defendants of notice of a plaintiff's claims so as to enable them to offer and prepare a defense. A person cannot be on notice of a litigant's claims if such person does not, in the first instance, even know they are an intended party to the lawsuit.

Moreover, in order to state a claim for relief under § 1983, Plaintiff must link a named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights. *See* 42 U.S.C. § 1983.

Plaintiff's use of "ect. al." falls far short of the minimal pleading standards of Fed. R. Civ. P. 8 and the requirements for § 1983 claims. Thus, all claims against "ect. al." are dismissed.

In conclusion, for all of the reasons explained above, none of the allegations in Thompson's complaint state a claim for relief under § 1983. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1). The complaint is **DISMISSED WITHOUT PREJUDICE**.

V.     **AMENDMENT UNDER THE PLRA**

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily,

13

before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). But courts are not required to grant leave to amend where an amendment cannot cure the deficiency. *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that . . . amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that *sua sponte* dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). Here, the Court finds that Thompson should be given the opportunity to amend his complaint.

## VI. CONCLUSION

For all of the reasons explained above:

The Court **DISMISSES THE COMPLAINT WITHOUT PREJUDICE** for failure to state a claim on which relief can be granted, under 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1). Plaintiff's request for injunctive relief in the form of release from custody is **DENIED**. Leave to amend the complaint is **GRANTED**. Any amendment to Plaintiff's claims must be filed within twenty-one (21) days after the date of this order. Plaintiff is advised that an amended complaint will supersede the original complaint and must be complete in itself without reference to the prior pleadings. The amended complaint must be signed, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint. All claims alleged in an amended complaint must arise from the facts alleged in the original complaint. Each claim for relief must be stated in a separate count and must identify

each Defendant sued in that count.  If Plaintiff fails to file an amended complaint within the time specified, the Court will assess a strike pursuant to 28 U.S.C. § 1915(g) and enter judgment.

Given that Plaintiff's complaint is dismissed for failure to state a claim to relief, his request for appointment of counsel (ECF No. 1 at PageID 17) is **DENIED** as moot, subject to his right to re-submit his request in the future if this case goes forward.

**SO ORDERED**, this 10th day of May, 2021.

           *s/ John T. Fowlkes*
           JOHN T. FOWLKES
           UNITED STATES DISTRICT JUDGE